Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK FERREIRO,<br><br>        Plaintiff,<br><br>    vs.<br><br>GRUBHUB INC., BRIAN McANDREWS, DAVID FISHER, LLOYD FRINK, DAVID HABIGER, LINDA JOHNSON RICE, KATRINA LAKE, GIRISH LAKSHMAN, MATT MALONEY, KEITH RICHMAN,<br><br>        Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)    Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)    Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Frank Ferreiro ("Plaintiff"), by his attorneys, on behalf of himself, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ALLEGATIONS</u>**

1.      Plaintiff brings this action on behalf of himself against Grubhub Inc. ("Grubhub" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of the Individual Defendants' efforts to sell the Company to

Just Eat Takeaway.com N.V. ("Just Eat" or the "Parent) and its affiliates as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock transaction valued at approximately $7.3 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 12, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger and subsequent amendments thereto filed on September 4, 2020, and March 12, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, Grubhub will become an indirect wholly-owned subsidiary of Just Eat, and Grubhub's public stockholders will receive, in exchange for each share of Grubhub common stock they own, will receive American Depositary Receipts ("ADRs") representing 0.6710 shares of Just Eat ordinary stock. This implied a per share value of $75.15 for Grubhub based on Just Eat's closing price on June 9, 2020 of €98.60 per share.

3.      Thereafter, on April 27, 2021, Grubhub filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The dubious nature of the Proposed Transaction is laid bare considering the lack of protections against possible fluctuations of Grubhub common stock.  Here, the Merger Consideration is comprised entirely of ADRs, which are tied to the value of Just Eat common stock, resulting in a fixed exchange ratio of 0.6710 which means that Plaintiff as a Grubhub stockholder will receive 0.6710 shares of Just Eat common stock in exchange for each of his Grubhub shares, regardless of Just Eat's stock price at the close of the transaction.  Thus, the consideration payable to Plaintiff is not insulated from fluctuations in Just Eat's stock price, and Plaintiff is left in the precarious position of not knowing whether the consideration payable to him

will decline further.  Such an oversight is compounded by the significant time that has elapsed, nearly one year, from the entry into the Merger Agreement to the present day, with an appreciable time remaining prior to the consummation of the Proposed Transaction.

5.      The Proposed Transaction is also unfair for a number of reasons.  Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board failed to initiate a proper market check and in which they only considered a handful of other potentially interested counterparties.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on April 27, 2021 with the SEC in an effort to solicit Plaintiff to vote his Grubhub shares in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Grubhub and Just Eat, provided by Grubhub and Just Eat to the Company's financial advisor Evercore Group L.L.C. ("Evercore") and to Just Eat's financial advisor, Goldman Sachs International ("Goldman Sachs"); and (c) the

data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore and provided to the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

9.      Plaintiff is a citizen of Pennsylvania, and at all material times, has been a stockholder of Grubhub.

10.      Grubhub together with its subsidiaries, provides an online and mobile platform for restaurant pick-up and delivery orders in the United State. Grubhub is incorporated under the laws of the State of Delaware and has its principal place of business located at 111 West Washington, Suite 2100, Chicago, IL 60602.  Shares of Grubhub stock are traded on the New York Stock Exchange under the symbol "GRUB".

11.      Defendant Brian McAndrews ("McAndrews") has been a Director of the Company at all relevant times.  In addition, McAndrews serves as the Chairman of the Board the Company.

12.      Defendant David Fisher ("Fisher") has been a Director of the Company at all relevant times.

13.      Defendant Lloyd Frink ("Frink") has been a Director of the Company at all relevant times.  In addition, Carter serves as the Company's Lead Director.

14.      Defendant David Habiger ("Habiger") has been a Director of the Company at all relevant times.

15.      Defendant Linda Johnson Rice ("Rice") has been a Director of the Company at all relevant times.

16.     Defendant Katrina Lake ("Lake") has been a Director of the Company at all relevant times.

17.     Defendant Girish Lakshman ("Lakshman") has been a Director of the Company at all relevant times.

18.     Defendant Matt Maloney ("Maloney") has been a Director of the Company at all relevant times.  In addition, Maloney serves as the Company's Chief Executive Officer ("CEO").

19.     Defendant Keith Richman ("Richman") has been a Director of the Company at all relevant times.

20.     The Defendants identified in ¶¶ 11-19, above, are sometimes collectively referred to herein as the "Individual Defendants".

21.     Non-Party Just Eat operates an online food delivery marketplace.  The company was founded in 2000 and is headquartered in Amsterdam, the Netherlands.  Shares of Just Eat common stock are traded on the Euronext Amsterdam exchange under the ticker symbol "TKWY."

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendants are incorporated in this District, conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient

minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and Grubhub stock is traded on the New York Stock Exchange which is located in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25.     Grubhub together with its subsidiaries, provides an online and mobile platform for restaurant pick-up and delivery orders in the United States.

26.     The Company connects approximately 300,000 local restaurants with diners in various cities. It offers mobile applications and mobile Websites; and operates Websites through grubhub.com, seamless.com, and menupages.com.

27.     The Company also provides corporate program that offers employees with various food and ordering options, including options for individual meals, group ordering, and catering, as well as proprietary tools that consolidate various food ordering into a single online account. In addition, it offers Grubhub for Restaurants, a responsive web application that can be accessed from computers and mobile devices, as well as Grubhub-provided tablets; GH+ subscription program to diners; delivery services to restaurants; point of sale (POS) integration, which allows restaurants to manage Grubhub orders and update their menus directly from their existing POS system; and Website and mobile application design and hosting services for restaurants, as well as technology and fulfillment services, including order transmission and customer relationship management tools.

Case 1:21-cv-03945-LAP   Document 1   Filed 05/04/21   Page 7 of 27

28.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 6, 2020 press release announcing its First Quarter 2020 financial results, the Company highlighted such milestones as $363.0 million in revenues, a12% year-over-year increase.

29.     Speaking on these positive results, Grubhub President and Chief Financial Officer Adam DeWitt, stated, "COVID-19 has driven a significant uptick in new diners and orders from existing users as most restaurant dining rooms have been temporarily closed nationwide".

30.     DeWitt went on to comment on a strong future outlook for Grubhub noting at that time, "At current volume trends, we could be generating meaningful Adjusted EBITDA in the second quarter."

31.     Such predictions proved to be accurate, with Grubhub reporting a massive 53% year-over-year revenue increase with $504 million in revenue reported in a February 3, 2021 press release announcing the Company's Fourth Quarter and Full Year 2020 financial results. Notably this figure was also significantly higher than the $363.0 million reported in Company's Q1 2020 financial report, indicating that Grubhub's value has increased significantly since the Proposed Transaction was agreed to nearly a year ago.

***The Flawed Sales Process***

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

Case 1:21-cv-03945-LAP   Document 1   Filed 05/04/21   Page 8 of 27

Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

33.     Notably, the Company failed to conduct a sufficient market check for potentially interested third parties.  In fact, the Preliminary Proxy Statement indicates that the Board only considered two other potentially interested counterparties and does not indicate if any other outreach to find more potentially interested third parties was conducted at all.

34.     Next, while the Preliminary Proxy Statement does make reference to an "M&A Committee" of the Board, it fails to indicate whether all the directors assigned to sit on this committee were independent, outside directors.  Nor does the Preliminary Proxy Statement indicate what specific powers this M&A Committee had in relation to approval of any potential agreement.

35.     The Preliminary Proxy Statement does not provide adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

36.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Just Eat, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, and if so in what way and the specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

38.     On April 27, 2021, Grubhub and Just Eat issued a press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> **Amsterdam, 10 June 2020,** Just Eat Takeaway.com N.V. (AMS: TKWY, LSE: JET), (the "Company" or "Just Eat Takeaway.com"), and Grubhub Inc. (NYSE: GRUB) ("Grubhub") have entered into a definitive agreement whereby the Company is to acquire 100% of the shares of Grubhub in an all-stock transaction (the "Transaction") to create the world's largest online food delivery company outside of China, measured by Gross Merchandise Value ("GMV") and revenues.
>
> The Transaction represents Just Eat Takeaway.com's entry into online food delivery in the United States ("U.S.") and builds on the strategic rationale for its recent merger with Just Eat plc ("Just Eat"). A combined Just Eat Takeaway.com and Grubhub (the "Combined Group") will become the world's largest online food delivery company outside of China1, with strong brands connecting restaurant partners with their customers in 25 countries. The Combined Group will be built around four of the world's largest profit pools in online food delivery: the U.S., the United Kingdom ("U.K."), the Netherlands and Germany, increasing the Combined Group's ability to deploy capital and resources to strengthen its competitive positions in all its markets. The Combined Group has strong leadership positions in almost all countries in which it is present and will become a significant player in North America. Just Eat Takeaway.com owns the leading Canadian business SkipTheDishes. The Combined Group is one of the few profitable players in the space and processed approximately 593 million orders in 2019 with more than 70 million combined active customers globally.
>
> Key Terms
>
> • Under the terms of the Transaction, Grubhub shareholders will be entitled to receive American depositary receipts ("ADRs") representing 0.6710 Just Eat Takeaway.com ordinary shares in exchange for each Grubhub share, representing an implied value of $75.15 for each Grubhub share (based on the undisturbed closing price of Just Eat Takeaway.com on 9 June 2020 of €98.602) and implying a total equity consideration (on a fully diluted basis) of $7.3 billion.
>
> • Immediately following completion of the Transaction, Grubhub shareholders are expected to own ADRs representing approximately 30.0% of the Combined Group (on a fully diluted basis).
>
> • On completion, Matt Maloney, CEO and founder of Grubhub, will join the Just Eat Takeaway.com Management Board and will lead the Combined Group's businesses across North America and two current Grubhub Directors will join the Just Eat Takeaway.com Supervisory Board.

• The Transaction is subject to the approval of both Just Eat Takeaway.com's and Grubhub's shareholders, as well as other customary completion conditions. Subject to satisfaction of the conditions, completion of the Transaction is anticipated to occur in the first quarter of 2021.

• The Combined Group will be headquartered and domiciled in Amsterdam, the Netherlands, with its North American headquarters in Chicago and a significant presence in the U.K.

• Just Eat Takeaway.com is listed on Euronext Amsterdam and the Main Market of the London Stock Exchange and will introduce an ADR listing in the U.S.

Both the Managing Board and the Supervisory Board of Just Eat Takeaway.com and the Board of Directors of Grubhub are recommending the Transaction to their respective shareholders. Jitse Groen, CEO and founder of Just Eat Takeaway.com, has entered into a voting and support agreement, and subject to and in accordance with the terms thereof, has committed to vote in favour of the Transaction at the Just Eat Takeaway.com extraordinary general meeting ("EGM").

Jitse Groen, CEO and founder of Just Eat Takeaway.com, said: "Matt and I are the two remaining food delivery veterans in the sector, having started our respective businesses at the turn of the century, albeit on two different continents. Both of us have a firm belief that only businesses with high-quality and profitable growth will sustain in our sector. I am excited that we can create the world's largest food delivery business outside China. We look forward to welcoming Matt and his team to our company and working with them in the future."

Matt Maloney, CEO and founder of Grubhub, commented: "When Grubhub and Seamless were founded, the online takeout industry didn't exist in the U.S.. My vision was to transform the delivery and pick-up ordering experience. Like so many other entrepreneurs, we started modestly – restaurant by restaurant in our Chicago neighbourhood. Today, Grubhub is a leader across North America. I've known Jitse since 2007 and his story is much like mine. Combining the companies that started it all will mean that two trailblazing start-ups have become a clear global leader. We share a focus on a hybrid model that places extra value on volume at independent restaurants, driving profitable growth. Supported by Just Eat Takeaway.com, we intend to accelerate our mission to be the fastest, best and most rewarding way to order food from your favourite local restaurants in North America and around the world. We could not be more excited."

Strategic Rationale

Just Eat Takeaway.com's mission has consistently been focused on becoming the best food delivery company on the planet. Since its founding in 2000, Takeaway.com has chosen only to enter into markets in which it believes it can become a leader and be profitable. In fact, it is one of the rare examples of a

profitable food delivery platform. The profits in the Netherlands helped secure a leadership position in Germany and other Continental European countries. The growth and profitability of the Takeaway.com businesses eventually allowed it to merge with Just Eat, another profitable European food delivery business. As a result, Just Eat Takeaway.com has leading positions in three of the world's four largest profit pools for food delivery: the U.K., Germany and the Netherlands.

Just Eat Takeaway.com management believes that Grubhub is the best food delivery company in the U.S. and it is the only one which is culturally similar to Just Eat Takeaway.com. It has its origins in marketplace, and unlike most other food delivery companies, it has consistently been EBITDA positive. The competitive situation in the U.S. has changed over the past few years. In response, Grubhub successfully transformed its business into a hybrid model to meet the heightened competition. Just Eat Takeaway.com management believes that this is the right strategy. Success in the U.S. depends on deploying the right mix of logistics and marketplace region-by-region, a balance Grubhub has achieved with profitable leading positions in key U.S. population centres. Despite this progress, the U.S. remains an underpenetrated market, with a tremendous TAM. It is nowhere near its end-state.

Grubhub as part of Just Eat Takeaway.com will become a much stronger business. Just Eat Takeaway.com owns SkipTheDishes, the clear leader in Canada. By building a North American leadership position, Just Eat Takeaway.com will be able to further strengthen both the Canadian and U.S. businesses. Just Eat Takeaway.com will prioritise sustainable growth over profits, as this has been a major driver of its strategy and success in Europe. Grubhub has leading positions in a number of large U.S. cities, including New York. Just Eat Takeaway.com intends to invest in expanding these leading positions.

While in spirit Just Eat Takeaway.com is the same company as at the beginning of last year, in size it is not. Just Eat Takeaway.com has become one of the world's largest food delivery companies. The latter also means that its main competitors are no longer from Europe. They are large international operators. This transaction significantly strengthens its global competitive position.

Transaction Highlights

• Creates the world's largest food delivery company, outside of China, measured by GMV and revenue.

•The Company is one of the few profitable players at scale in the space.

• Creates a company built around four of the world's largest profit pools in food delivery: the U.S., the U.K., the Netherlands and Germany. These markets show substantial further opportunities for growth, significant penetration upside and longer-term profitability improvements.

• Grubhub will be much stronger as part of Just Eat Takeaway.com. The combination with Just Eat Takeaway.com's Canadian business, SkipTheDishes, as well as the increased scale and resources of the Combined Group will provide greater flexibility to make strategic, long-term investment decisions.

• In the U.S., where the market is competitive and fragmented across local regions and cities, Grubhub's differentiated offering provides it with unique advantages given its large marketplace business, its Seamless corporate business, its large geographic footprint and extensive customer and restaurant relationships.

• The enhanced scale and leading positions of the Combined Group provide an opportunity to leverage best practices from Just Eat Takeaway.com and Grubhub and create the broadest possible offering to both restaurant partners and consumers. The Combined Group will have a greater ability to leverage investments, in particular in technology, marketing and restaurant delivery services across the combined business.

• The Combined Group will have a founder-led management team with a proven track record of building leading positions in markets of scale. The new management team has 55+ years of combined experience in the sector.

*Potential Conflicts of Interest*

39.     The breakdown of the benefits of the deal indicate that Grubhub insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Grubhub.

40.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Preliminary Proxy Statement fails to provide an accounting of such holdings, or the merger consideration they will be exchanged for upon the consummation of the Proposed Transaction.

41.     Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement, as follows:

| Name | Number of Shares Subject to Unvested In-the-Money Options[1] | Estimated Value of Unvested In-the-Money Options[2] | Number of Shares Subject to Unvested RSUs | Estimated Value of Unvested RSUs[3] |
|---|---|---|---|---|
| *Named Executive Officers* | | | | |
| Matthew Maloney | 135,056 | $1,570,701 | 173,775 | $10,807,067 |
| Adam DeWitt | | | 155,169 | $9,649,960 |
| Samuel Hall | — | — | 65,841 | $4,094,652 |
| Margo Drucker | | | 50,158 | $3,119,326 |
| Maria Belousova[4] | — | — | — | — |
| Brandt Kucharski | — | — | 18,849 | $1,172,219 |
| | | | | |
| *Other Executive Officers as a Group*[5] | — | — | — | — |
| *Non-Employee Directors* | | | | |
| David Habiger | 1,242 | $5,912 | 540 | $33,583 |
| Brian McAndrews | 1,242 | $5,912 | 540 | $33,583 |
| Keith Richman | 1,242 | $5,912 | 540 | $33,583 |
| Linda Johnson Rice | 1,242 | $5,912 | 540 | $33,583 |
| Katrina Lake | 1,242 | $5,912 | 540 | $33,583 |
| Girish Lakshman | 1,242 | $5,912 | 540 | $33,583 |
| Lloyd Frink | 1,242 | $5,912 | 540 | $33,583 |
| David Fisher | 1,242 | $5,912 | 540 | $33,583 |

42.     In addition, certain employment agreements with certain Grubhub executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Matthew Maloney | $1,781,901 | $12,377,769 | $31,854 | $14,191,524 |
| Adam DeWitt | $813,941 | $9,649,960 | $21,236 | $10,485,137 |
| Samuel Hall | $562,601 | $4,094,652 | $21,236 | $4,678,489 |
| Margo Drucker | $675,787 | $3,119,326 | $21,236 | $3,816,349 |
| Maria Belousova[4] | — | — | — | — |
| Brandt Kucharski | $200,277 | $1,172,219 | $10,618 | $1,383,114 |

43. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

44. Thus, while the Proposed Transaction is not in the best interests of Grubhub, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

45. On April 27, 2021, the Grubhub Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46.     Specifically, the Preliminary Proxy Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose

a.  The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board or anyone on its behalf throughout the sales process;

b.  The specific powers of the M&A Committee;

c.  Whether the directors who make up the M&A Committee are independent outside directors;

d.  Whether the confidentiality agreements entered into by the Company with Just Eat differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Just Eat, would fall away;

f.  The specific reasoning as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

g.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications

regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Grubhub's Financial Projections*

47.    The Preliminary Proxy Statement fails to provide material information concerning financial projections provided by Grubhub management and relied upon by Evercore in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

48.    Notably the Preliminary Proxy Statement indicates that in creating its fairness opinion, Evercore reviewed, "certain projected financial data relating to Grubhub and furnished to Evercore by management of Grubhub, as approved for Evercore's use by Grubhub."

49.    As such, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Grubhub and/or Just Eat management provided to the Board and Evercore.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to the "*Grubhub Financial Projections*" the Preliminary Proxy Statement fails to include material line items for the following metrics:

      a.  Adjusted EBITDA, including the underlying metrics of net income (loss) before acquisition, restructuring and certain legal costs, income taxes, net interest expense, depreciation and amortization and stock-based compensation expense; and

      b.  Levered free cash flow, including the underlying metrics of net income (loss) plus depreciation, amortization, stock-based compensation expenses, change in working capital and cash flow from other operating activities and less capital expenditures.

51.     The Preliminary Proxy Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the Grubhub Company Projections.

52.     The Preliminary Proxy Statement also fails to indicate if the Grubhub Board analyzed the Projections in relation to historical 2020 financial data as it came to pass, given the considerable length of time since the entry into the Merger Agreement, and if so, what actions if any, were taken based on such information.

53.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed

Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning Just Eat's Financial Projections*

55.     The Preliminary Proxy Statement fails to provide material information concerning Just Eat's financial projections provided by Grubhub management and relied upon by Evercore in its analyses.  The Preliminary Proxy Statement discloses financial projections for Just Eat which are materially misleading.

56.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Grubhub management provided to the Board and Evercore regarding Just Eat's projected financial information.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

57.     Of initial and primary concern, the Preliminary Proxy indicates that while the Grubhub Board requested financial projection information from Just Eat as part of its due diligence leading up to the entry into the Proposed Transaction, Just Eat rebuffed these efforts, and instructed Grubhub to, "use publicly available equity analyst forecasts as the basis for information on Just Eat Takeaway.com's potential future performance", which Grubhub thereafter did.

58.     Such a genesis for the so-called "projections" of Just Eat is entirely inappropriate, with no way for Plaintiff or any other public stockholder of the Company to determine how accurate Grubhub's development of such projection information is.  Supplying such information

as "projection" data for Just Eat is even more specious when considering that the entirety of the merger consideration is, in essence, composed of Just Eat stock.

59.     The Preliminary Proxy Statement also fails to provide the specific inputs and assumptions used by Grubhub to determine the Just Eat projections based on publicly available data, including specifically the specific inputs and assumptions that underly the following assumptions:

a.   Adjusted EBITDA margin improving from 7% in 2020 to 31% in 2025 as a result of cost of sales, staff costs, and other operating expense leverage;

b.   Adjusted EBITDA increasing at a CAGR of 13% from 2025 to 2029;

c.   Capital expenditures increasing at a CAGR of 10% from 2020 to 2029;

d.   An income tax rate of 21% from 2020 to 2029;

e.   Constant foreign exchange rates; and

f.   No dividend and no equity issuances occurring other than in connection with share-based compensation.

60.     In addition, with regard to the "*Counterparty Financial Projections*" which Grubhub generated and which was provided to Evercore the Preliminary Proxy Statement fails to include material line items for the following metrics:

g.   Adjusted Net Revenue, including the underlying metrics of commission revenue plus other revenue less vouchers and discounts;

h.   Adjusted EBITDA, including the underlying metrics of profit or loss before depreciation, amortization, impairment, finance income and expenses, share of results of associates and joint ventures, gain on joint ventures disposal,

acquisition related transaction and integration costs, and income tax expense, but including stock-based compensation expenses; and

    i.   Unlevered Free Cash Flow, including the underlying metrics of tax affected adjusted EBITDA less capital expenditures and changes in net working capital.

61.    The Preliminary Proxy Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the Counterparty Financial Projections.

62.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

63.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Just Eat's true worth, the value of the merger consideration, the accuracy of Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

64.    In the Preliminary Proxy Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

65.     With respect to the *Discounted Cash Flow Analysis* for Grubhub, the Preliminary Proxy Statement fails to disclose the following:

      a.  Grubhub's terminal values;

      b.  The specific inputs and assumptions used to determine the utilized terminal year multiples range of 16.0x to 20.0x;

      c.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range post-December 31, 2024 of 6.8% to 9.2%;

      d.  The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%;

      e.  Grubhub's weighted average cost of capital;

      f.  Grubhub's illustrative enterprise values;

      g.  The estimated present value as of March 31, 2020 of the tax savings of Grubhub attributed to its net operating losses;

      h.  Grubhub's net debt as of  March 31, 2020;

      i.  Grubhub's illustrative equity values;

      j.  The number of fully diluted outstanding Grubhub shares; and

      k.  The specific inputs and assumptions used to calculate the utilized implied values of synergies multiples range of 10.0x to 12.0x.

66.     With respect to the *Discounted Cash Flow Analysis* for Just Eat, the Preliminary Proxy Statement fails to disclose the following:

      a.  Just Eat's terminal values;

      b.  The specific inputs and assumptions used to determine the utilized terminal year multiples range of 12.0x to 14.0.0x;

c. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range post-December 31, 2024 of 2.6% to 5.3%;

d. The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%;

e. Just Eat's weighted average cost of capital;

f. Just Eat's illustrative enterprise values;

g. The estimated present value as of March 31, 2020 of the tax savings of Just Eat attributed to unused losses;

h. Just Eat's net debt as of  March 31, 2020;

i. Just Eat's illustrative equity values; and

j. The number of fully diluted outstanding Just Eat shares.

67. With respect to the *Equity Research Analyst Price Targets* for Grubhub, the Preliminary Proxy Statement fails to disclose the following:

a. The specific research analyst stock price targets used; and

b. The identity of the research analysts that created the utilized price targets.

68. With respect to the *Equity Research Analyst Price Targets* for Just Eat, the Preliminary Proxy Statement fails to disclose the following:

a. The specific research analyst stock price targets used; and

b. The identity of the research analysts that created the utilized price targets

69. With respect to the *Premia Paid Analysis* for Grubhub, the Preliminary Proxy Statement fails to disclose the following:

a. The specific transactions analyzed; and

b.  The specific inputs and assumptions used to determine the utilized reference rages of premia of 15.0% to 25.0%.

70.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

71.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Grubhub stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting Plaintiff to vote his shares in favor of the Proposed Transaction.

74.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

75.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

76.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

77.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

78.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

79.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of this entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Individual Defendants)

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff.

82.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

83.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Grubhub's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders, including Plaintiff, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

84.    The Individual Defendants acted as controlling persons of Grubhub within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Grubhub to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Grubhub and all of its employees.  As alleged above, Grubhub is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment against Defendants jointly and severally, and equitable and injunctive relief, in Plaintiff's favor and against defendants as follows:

A.    Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

B.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the highest possible price for Plaintiff and like shareholders;

C.      Directing Defendants to exercise their fiduciary duties to obtain an acquisition which is in the best interest of Plaintiff and like Grubhub stockholders until the process for the sale or proper auction of the Company is completed and the highest possible price is obtained;

D.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof and in the event the transaction is consummated prior to the entry of this court's final judgment, rescinding it and awarding rescissory damages;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting any other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 4, 2021

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*